## MAINE CENTRAL RAILROAD COMPANY

*vs.*

## WATERVILLE AND FAIRFIELD RAILWAY AND LIGHT COMPANY.

Somerset.    Opinion November 7, 1896.

*Railroads.    Crossings.    Expense.    Stat. 1895, c. 72.*

Where it is the evident intent of the legislature to leave the whole question of how railroad crossings should be constructed and maintained, and how the expense of such crossings should be borne, in the first instance to the sound judgment and discretion of the Railroad Commissioners, *held*; that their decisions will not be altered or reversed unless manifestly illegal or unjust.

*Held*; that whenever an alteration is made in an existing railroad track for the sole convenience and accommodation of another railroad, the expense should be borne by the latter.

After an examination, the court applies this rule to the present case.

ON EXCEPTIONS BY DEFENDANT.

This was a proceeding begun by petition of the Maine Central Railroad Company, January 21, 1896, to the Railroad Commissioners in which they represent that it possesses and operates a line of railroad from Portland to Skowhegan, passing through the town of Fairfield in the county of Somerset; that its railroad is crossed in the town of Fairfield by the electric railway of the defendant company; that the location of the crossing in question is at grade by means of crossing-frogs; that the crossing-frogs have heretofore been furnished and put in place at the sole expense of defendant company; that the existing condition of said frogs is such as to make the construction and manner of such crossing dangerous to public safety, including travelers upon the petitioner's railroad and on the defendant company.

The petitioner thereupon prayed the board of railroad commissioners for a change in the existing condition, construction and manner of such crossing; and that the board would decide what changes are necessary, and how such crossings shall be constructed and maintained, and how the expense thereof should be borne, according to the provisions of the statute of 1895, c. 72, § 1.

A hearing was had upon the petition by the board of commissioners January 31, 1896, who rendered the following decision:

## DECISION OF RAILROAD COMMISSIONERS.

"It was alleged upon the part of the Maine Central Railroad Company, and admitted on the part of the Waterville and Fairfield Railway and Light Company, that the crossing-frogs at the place named in the petition were in a ·condition dangerous to public travel, and should either be repaired, or replaced, by new ones. It was contended on the part of the Maine Central Railway Co., that there is a well-recognized custom in relation to this matter, and that where electric railways have crossed steam railroads, the ·crossing-frogs have been invariably paid for by the electric railway company, and some evidence was introduced tending to show such a custom. It may be, and probably is, true, that electric railways have paid for crossing-frogs in the first instance, when electric railways have been constructed across steam* railroads, and when the electric railway was the last one located. We think such has been the custom.

"But the electric railway claims that however that may be, this is a new and different question; that in this case the electric railway company paid for the crossing-frogs several years ago. The present claim is presented under section 1, chapter 72, of the Public Laws of 1895, which provides that 'any corporation or party operating such railroad may apply to the board of railroad commissioners for a change in the then existing condition, construction or manner of any such crossing, and said board shall determine what changes, if any, are necessary and how such crossing shall be constructed and maintained. The expense thereof to be borne as the railroad commissioners may order.'

"It appeared in evidence that this electric railroad company, in the first instance, did pay for the crossing-frogs which are now used at this place. But said frogs having become worn and, (we are satisfied) dangerous to public travel, we are asked, under the statute to determine what changes, if any, are necessary, and how such crossing shall be constructed and maintained, and how the expense thereof shall be borne.

" There seems to have been no statute in relation to the expense of crossings, where one railroad crosses another, until 1885, chapter 336 ; but that statute evidently had relation to the crossing of steam railroads only, and the statute of 1895, chapter 72 now gives the railroad commissioners jurisdiction where one railroad of any kind crosses another; so the question presented here is under this last statute.

" But the counsel for the Electric Railway Company goes further, and in argument claims that by its charter, his company has the right for its electric cars to pass and repass across the rails of the Maine Central Railroad Company, and over the highway, the same as any other vehicle on said highway, and that the Maine Central Railroad Company is obliged, under the law, to make proper provisions for the passage of electric cars across its railroad tracks.     He argues that the car of the electric railway is nothing more than the team or vehicle of any other person, or corporation, which has a right to pass and repass within the highway.     He argues that the building of an electric railway along the highway in this state is not a new servitude upon the street, and is not a new use of the way, but is only a new and later mode of using the way.     And he cites *Briggs* v. *Horse Railroad Company*, 79 Maine, 363.

" The court in that case was called upon to decide simply whether the owner of the fee, over which the street was built, was entitled to additional compensation for the building of a street railway; and the court held that the building of such a street railway through the public street was not a new servitude upon the land, because it was only a new and later mode of using the way, for which the owner had once received compensation.     We perceive no reason why we should attempt to extend the decision of the court in that case.     The court could not have intended to hold that the street car had the same rights in the street that a vehicle of any other kind would have, for if so, what becomes of the law of the road, chapter 19, § 2, of the revised statutes, which provides that persons traveling with teams, when meeting another traveling in an opposite direction, shall turn to the right of the middle of the

traveled part of the way; because the word 'team,' by section one means all kinds of conveyances on such ways for persons and property.

"If, in the later case, the court intended to lay down any such rule, as is here contended for, why does it become necessary to obtain a charter from the legislature, or under the general law, for persons or corporations to run electric cars in the streets and ways of cities and towns?

"We assume that the legislature, by P. L. of 1895, chap. 72 intended to give the board of railroad commissioners full jurisdiction in relation to the matter of crossings of railroads of any kind, subject to the appeal provided in that statute, and we have heretofore acted upon that assumption.

"Under this statute the matter of apportioning the expense of constructing and maintaining such crossings of electric railways with steam railroads has been before this board at eight different locations since this statute of 1895 was in force, and in every instance the board has put the whole expense, not only of constructing but of maintaining such crossings, upon the electric railway company, when such electric railway company was the one last located; and in no instance has there been any objection upon the part of the electric railway company to paying the expense of constructing and maintaining such crossing-frogs.

"At three of these crossings, which were considered unusually dangerous, the board has ordered signal officers to be stationed, at the joint expense of the two companies: but the expense of constructing and maintaining the crossing-frogs has been in each case put upon the railway last located.

"The legislature of this State, by chap. 336 of the P. L. of 1885, deemed it equitable when steam railroads cross each other at grade, to put the expense of constructing and maintaining a suitable signal station at such crossing upon the parties operating the railroad last located, but that the signal officer should be kept at the joint expense of the parties operating the railroads.

"While the statute does not control the question here presented, we think our decisions in relation to this matter have been in line

with the equitable rule laid down by the legislature; and no reason has been presented to us in this case why we should change it.

"We are, therefore, of the opinion, and so decide, that the expense of constructing and maintaining this crossing shall be borne by the Waterville and Fairfield Railway and Light Company. That the said company shall provide new, good and substantial crossing-frogs, the angle of which shall conform to the angle of the several tracks at point of crossing as now established. The rails in said crossing-frogs shall be of like metal, pattern and weight as the rails now in use by the Maine Central Railroad, and the Waterville and Fairfield Railway and Light Company respectively.

"Said crossing shall be laid in a first-class manner, on good ties, correctly aligned and surfaced.

"The work of laying and maintaining shall be done by the Maine Central Railroad Company, but the whole expense thereof shall be borne by the Waterville and Fairfield Railway and Light Company.

"Dated at Augusta, this fifth day of February, A. D. 1896.

> JOSEPH B. PEAKS,        ⎫  Railroad
> BENJ. F. CHADBOURNE,  ⎬ Commissioners
> FREDERIC DANFORTH,  ⎭  of Maine."

The defendant company took an appeal from this decision to the March term of the court below, sitting at Skowhegan; and the presiding justice upon hearing the case ordered that the report and decision of the Railroad Commissioners be accepted and recorded. Thereupon the defendant company took exceptions.

*Edmund F. and Appleton Webb*, for plaintiff.

This court will treat this appeal as a review of the decision of a subordinate tribunal. *In re, New Hamburg, etc., R. R. Co.*, 83 N. Y. 76; *In re, Amsterdam, etc., R. R. Co.*, 93 N. Y. 578. The burden is on the defendant to show any error in the decision below.

The electric road has no greater rights in the highway than the steam road. The street road can have no greater right in crossing

a steam road than a steam road can have in crossing another steam road not in a highway. Where one steam road crosses another steam road, the law is settled by legislative act. Why should there be any distinction between roads of any kind in crossing another road? In other words, there should be no difference as between steam or electric roads. The railroad commissioners have made no difference. The locus, so to speak, is a part of the highway, and lying between the steam rails.

When the plaintiff company built its road, it was required to pay damages for its right of way, and in that way obtain its possession. Stat. 1848, c. 186.

The defendant, like all other street railways, belongs to the more privileged class. It is wholly in the street from Waterville to Fairfield. It paid nothing for this privilege. When the defendant, in constructing its line, crossed a street in its way, it adapted itself to crossing such street or way; it adapted itself to the various grades of the highway. The defendant is a new-comer. It is the "railroad last located," and has no greater rights in a highway than the steam railroad.

*W. T. Haines*, for defendant.

Prior to the act of 1895 street railways under their charters had the same right in highways as any other traveler, modified by the mode or means of travel. *Briggs* v. *Horse Ry. Co.*, 79 Maine, 363. Act made no change in parties' right. Highway-crossings by railroads: *P. & R. R. Co.*, v. *Deering*, 78 Maine, 61; *R. R. Co.* v. *Co. Com.* 79 Maine, 386; *Mayo* v. *Veazie*, 45 Maine, 560; *Roxbury* v. *Boston R. R. Co.*, 6 Cush. 424; *Little Miami R. R. Co.* v. *Green*, 31 Ohio St. 383; *Com.* v. *Hartford R. R.*, 14 Gray 379; *Welcome* v. *Leeds*, 51 Maine, 313; *North Cent. R. R. Co.* v. *Baltimore*, 46 Md. 425; *State* v. *St. Paul R. R. Co.*, 35 Minn. 131, S. C. 59, Am. Rep. 313; 1 Rorer on Railroad, 541; R. S., c. 51, §§ 28, 31; Stats. 1885, c. 310; 1889, c. 282; 1895, c. 312.

Statutes have increased the obligations of railroads to the public, and enlarged none of their rights.

Prior rights: *Cin. etc., Ry. Co.* v. *City etc., Tel. Asso.* 27 N. W.

Rep. 890 and cases; *Hud. etc., Tel. Co.,* v. *Watervliet, etc., R. R. Co.,* 135 N. Y. 393; *Railway* v. *Railway,* 30 Ohio, 604; *C. & A. R. R.* v. *J. L. & A. Ry. Co.,* 105 Ill. 388, and cases; *Cooke* v. *B. & L. R. R.,* 133 Mass. 188; *Norwood* v. *N. Y. & N. E. R. R. Co.,* 161 Mass. 266; *Davis* v. *Co. Com.* 153 Mass. 218; *In re, R. R. Com.* 87 Maine, 247; 2 Wood on Railroads, p. 1171; *Mass. Cent. R. R. Co.* v. *Boston, etc., R. R. Co.,* 121 Mass. 124.

Before the act of 1895, the expense of crossings must have been borne by the steam railroad and according to the principles in above cases. Statute of 1895, at most, contemplates that the expense should be apportioned between the two roads using the highway. It nowhere indicates that the total expense of making and maintaining crossings shall be put on street railways; to do so would be unconstitutional, because it would be taking private property without compensation. It being in derogation of common law, the statute should be construed strictly.

The decision seems more like taking private property for private use than for public use. If the crossing-frog was not required then the steam railroad would require fifty feet of rail. Thus the steam railroad is relieved of maintaining fifty feet of track that it was compelled to maintain before the crossing-frog became necessary.

SITTING: WALTON, EMERY, HASKELL, WHITEHOUSE, WISWELL, JJ.

WALTON, J. The track of the Waterville and Fairfield Railway and Light Company crosses the track of the Maine Central Railroad, and the Railroad Commissioners have decided that the Waterville and Fairfield Company shall bear the whole expense of constructing and maintaining the crossing. On appeal, the court below accepted the report of the commissioners and ordered it to be recorded, and the case is before the law court on exceptions.

In support of the exceptions it is urged that it was unreasonable and unjust to place the whole burden of constructing and maintaining the crossing upon the Waterville and Fairfield Company, and that the Act of 1895, c. 72, under which the Commissioners acted,

not only authorizes but contemplates that the expense shall be apportioned between the two companies.

The Act of 1895, c. 72, undoubtedly authorizes the Railroad Commissioners to apportion the expense, but it does not require them to do so. It leaves the question to their sound judgment and discretion. And, on appeal, the only rule prescribed for the presiding justice is that he shall make such order or decree as law and justice shall require. The statute declares that "exception may be taken to such order or decree," but it prescribes no rules by which the law court shall be governed in passing upon the exceptions. It seems to us that the evident intention of the legislature was to leave the whole question of how railroad crossings should be constructed and maintained, and how the expense of such crossings should be borne, in the first instance to the sound judgment and discretion of the Railroad Commissioners, and we think that their decision should not be altered or reversed unless manifestly illegal or unjust.

Taking this interpretation of the statute for our guide, the question is whether the decision of the Railroad Commissioners is manifestly illegal or unjust. We do not think it is. At the time when this crossing became necessary, the track of the Maine Central Railroad had been completed, and the crossing was needed for the accommodation of the Waterville and Fairfield road alone, and it does not seem to us that it was either illegal or unjust to require the latter road to bear the expense of its construction and maintenance. It seems to us that whenever an alteration is made in an existing railroad track for the sole convenience and accommodation of another railroad, the expense should be borne by the latter. Possibly exceptions may exist to such a rule; but we fail to discover any reason for holding that the present case furnishes such an exception.

*Exceptions overruled.*