## West Jersey and Seashore Railroad Company

*v.*

## Atlantic City and Suburban Traction Company et al.

[Filed January 8th, 1904.]

1. Jurisdiction to determine how conflicting easements of way across the same place shall be occupied and used by two or more holders of such easements, is vested in the court of chancery.

2. That jurisdiction is one of the inherent equitable powers of the court of chancery, which is incapable of exercise by any other forum, and is protected by article 6, section 1 of the constitution of this state.

3. It is unaffected by any legislative franchise granting to a corporation an easement of way, or by a legislative charter which empowers a municipality to regulate streets and railroad crossings within its bounds.

4. Where a newly-organized company is authorized to lay its railroad tracks at grade across the existing tracks of another railroad, and the construction proposed involves only such a crossing, the new company should pay the expenses incident to the safe construction of its tracks across those of the senior company.

---

On bill, answers and proofs.

*Mr. Joseph H. Gaskill,* for the complainant.

*Mr. Eli H. Chandler* (with whom was *Mr. W. H. Sponsler,* of the Pittsburg bar), for the Atlantic City and Suburban Traction Company, defendant.

*Mr. Harry Wootton,* for Atlantic City, defendant.

GREY, V. C. (orally).

The questions argued in this cause, so far as they are affected by previous decisions, present points of law with which I am somewhat familiar. I have also had an opportunity during the argument to examine most of the cases cited by counsel. It is desirable that this case be speedily decided, as the defendant company's building of its railroad awaits its determination. The essential questions discussed are controlled by established principles, and can as well be decided now as upon further consideration.

The bill is filed by the West Jersey and Seashore Railroad Company, alleging that the tracks of its Chelsea branch cross Florida avenue, in Atlantic City, at grade; that the defendant, the Atlantic City and Suburban Traction Company, an electric trolley company, has a right of crossing at the same place and is about to construct its crossing there, also at grade; that the Atlantic Coast Construction Company is engaged in building the trolley road and crossing and claims a right, therefore, to the temporary occupation of the *locus in quo* under its contract; that the Pleasantville and Atlantic Turnpike Company, or plank road company, is a turnpike company, also having a right to occupy Florida avenue at the same place, with the right to collect tolls, &c., and that the city of Atlantic City, within whose bounds this particular crossing at Florida avenue lies, has, under its charter, the right to regulate the use of the city streets and all crossings. All these parties have been made defendants and brought into court in this suit by the complainant, the bill of complaint stating the claim of each defendant at the crossing in question.

The bill shows that the city of Atlantic City has, by ordinance, acted on the question of the crossing of the steam railroad tracks by the trolley company's tracks, by authorizing the trolley company to cross the steam railroad tracks at grade, with no other precautions against danger of collision between the trains or cars of the two companies than a direction that the approaching trolley car shall be stopped, the conductor go ahead and signal to the motorman when the trolley car may safely cross.

This method, the complainant insists, is dangerous at this crossing, because of the great quantity of railroad and highway and intended trolley travel. at the place in question, and it asks that the trolley company be restrained from constructing its crossing of the steam railroad tracks (the right to build which is admitted), unless they build an overhead crossing, or, if that be not practicable and the crossing be constructed at grade, that the defendant company may be required to install an interlocking system of signals with provision for the derailing of cars on one or the other set of tracks before reaching the crossing, or may be required to arrange its crossing in such manner as the court may, under all the circumstances of the case, deem to be safe and proper, invoking the jurisdiction of this court to prescribe a mode in which the right to cross at grade shall be exercised.

So far as an overhead crossing is concerned, the complainant has not attempted, either by proof or argument, to claim that the circumstances of this case justify a decree that such a crossing should be required at the *locus in quo.*

The defendant Atlantic City and the other defendants, the construction company and the turnpike company, are here by simple appearance, making no active defence.

The Atlantic City and Suburban Traction Company makes a most energetic defence which stands practically upon two points —*first,* that this court has no jurisdiction to hear and determine the questions submitted by the bill (the *locus in quo* being conceded to be within the municipality of Atlantic City), because the defendant, the Atlantic City and Suburban Traction Company, has obtained a franchise from the state which authorizes it to cross the complainant's tracks at grade, and the city of Atlantic City has, by its charter, power to regulate grade crossings within that city, and that city having by its ordinance prescribed a mode of crossing, that mode, even if it tends to injure or impair the enjoyment of the easements of other parties at the same place, is conclusive, and this court has no jurisdiction to alter or change the mode prescribed by the city authorities. Shortly stated, the defendant contends that the legislative grants

of power to the traction company and to Atlantic City, and the action taken under those grants, have conclusively settled the rights of the parties at the crossing in question, so that this court has no jurisdiction in the matter.

That is the first and most strenuously argued point, largely because in the course of the testimony the other point, as to what plan for protection ought to be ordered, has been, by the very efficient exposition of the best and most scientific mode of crossing, pretty nearly agreed to (though not finally settled) by the evidence here produced and by the concessions of the parties, each to the other.

Upon the question of jurisdiction, it being shown that two or more railroad companies, or a railroad company and a turn-pike company, or a railroad company and electric road, or a railroad company and the general public using the public high-way, or all of them, have easements of way over the same place, usable by each according to its grant and its necessary implica-tions, and that at the crossing in that spot there is danger of obstruction or impairment of the easement of one by the manner in which another uses or proposes to use its easement, or danger to the traveling public, there seems to me no doubt that the court of chancery has jurisdiction (when invoked by any person interested in any of the easements which each may have a right there to enjoy) so to regulate the manner in which the parties shall use their several easements, that each of them and also the public may be saved from the threatened interference or danger.

It is of no significance to say that the defendant has a legis-lative grant, authorizing it to cross at grade, or that the city of Atlantic City, under its right to regulate grade crossings, has prescribed a mode. The grant of the franchise from the legis-lature, and the fixing of the mode of its enjoyment by the munici-pality, are essential incidents necessary to the existence of the defendant company's right, but they do not take away from the senior company, occupying the same place, its previously granted easement of way. When it appears that the new company's grant, as proposed to be used, threatens the impairment of the easement of the senior corporation at the same place, there

must be some forum where this question can be judicially heard and determined. The application is a seeking to enforce the equitable maxim that every man shall so use his own as to do the least possible injury to his neighbor. The control of the manner in which conflicting easements may be enjoyed does not take away the rights of any of the companies holding the easements. It only judicially ascertains how each shall so use its own that its use shall be the least disadvantage to the other. In the very nature of the case the only forum in which relief can be sought must be a court of equity. No other has the remedies of injunction and receiver, which are necessary to the enforcement of the decree fixing the rights of the several parties.

The jurisdiction which is invoked is one which, in my judgment, is inherent in this court and protected by the constitution of this state. It existed as one of the general equitable powers of this court at the time the constitution of 1844 was adopted, and is protected by the declaration of the constitution, article 6, section 1, under the head of "Judiciary," which provides that

"the judicial power shall be vested in a court of errors and appeals in the last resort in all causes as heretofore, a court for the trial of impeachments; a court of chancery; a prerogative court; a supreme court," &c.

There is in the constitution no other ascertainment of the jurisdiction of this court than the declaration that its judicial power shall be vested "as heretofore." So that whatever jurisdiction the court of chancery had at and previous to the time of the adoption of the constitution in 1844, it has now.

No legislation, whatever its form, can either directly or indirectly lessen or take away the constitutional powers of the court of chancery. Therefore, all these enactments which have been appealed to, granting rights of incorporation or powers to municipalities to regulate streets and crossings, whether within or without a city, make no difference. They cannot take away the inherent constitutional jurisdiction of the court of chancery (in cases where all these functions have been exercised, re-

sulting in the existence of conflicting easements) to hear the parties and determine how each shall enjoy his right as against the others having easements in the same place.

That is my understanding of the declaration of the jurisdiction of this court, made by Chief-Justice Beasley, sitting for the chancellor, in the case of *Delaware, Lackawanna and Western Railroad Co.* v. *Erie Railroad Co., 6 C. E. Gr. 304,* approved by the court of appeals in *National Docks Co.* v. *Central Railroad Co., 5 Stew. Eq. 767; National Docks Co.* v. *United Companies, 24 Vr. 224,* and in the case of *Palmyra* v. *Pennsylvania Railroad Co., 17 Dick. Ch. Rep. 616, 617,* which was unanimously affirmed on appeal (*18 Dick. Ch. Rep. 799*). There is in those opinions no reference to the constitutional relation of this element of chancery jurisdiction, but there can, I think, be no doubt that the power to adjust and arrange the enjoyment of conflicting easements is within the original equitable powers of a court of equity.

The case now presented for consideration has some elements of novelty, in that it asks this court to prescribe a mode in which a traction company shall arrange and hereafter manage its crossing of a steam railroad company's tracks. In the leading case before Chief-Justice Beasley the dispute was between two railroad companies concerning the use of the same tunnel. He allowed an injunction compelling an adjustment of the dispute, intimating that, if necessary, a receiver might be appointed to carry the court's decree into effect. The judgments in the cases of *National Docks Co.* v. *Central Railroad Co., 5 Stew. Eq. 767,* and *National Docks Co.* v. *United Companies, 24 Vr. 224,* present different grounds of dispute, but each involved the basic principle of a conflict between parties having easements of way at the same place, regarding the occupation or use of their rights. There is no substantial difference as to the equitable jurisdiction, whether the contention between the parties arises for one reason or another. It is enough if there is a dispute touching the occupation or use of easements at the same place.

The jurisdiction of this court is, I think, beyond challenge. It only remains to examine the proofs to ascertain how the

respective rights of the parties at the *locus in quo* may equitably be adjusted.

At this Florida avenue crossing the public highway, the steam railroad tracks and the traction company's tracks will each cross the other at grade. The steam railroad at this place has double tracks. One track is a branch extending down to Chelsea from its main line, and the other track, which runs alongside, is used occasionally as a double-passage track, and usually as a storage track. The proof is that the use of these tracks varies greatly at different seasons of the year; that the locality which they serve is a part of Atlantic City, which is growing with rapidity and constantly calling for more extended railroad service. It is here shown that the complainant company, in addition to the continued present use of its tracks for steam railroad purposes, intends very shortly to put trolley cars on the same tracks and propel them by electricity. This will largely increase the passenger service on the steam railroad tracks over this crossing.

The Atlantic City and Suburban Traction Company proposes to build its tracks at grade along the middle of Florida avenue, a public highway, across these steam railroad tracks, with no other precautionary arrangements than are required by the Atlantic City ordinance, which simply provides, as stated, for the stoppage of the electric trolley car as it approaches the railroad tracks until the conductor shall have run ahead, seen that there is no danger and signaled to the car to come on. The motorman then starts the trolley car, and in that way it crosses the railroad tracks. That is all the protection that is afforded either to the steam railroad trains, to the trolley cars or to the general public traveling the highway, all of whom cross at the same place.

The proof is, and the indications all through the case are, that this Atlantic City and Suburban Company is a corporation which has a purpose and expectation of doing a large business in carrying passengers over its lines. Atlantic City is a place of phenomenal transient travel. The number of people annually carried to and from Atlantic City is many times its own population. Its greatest population in the summer season is prob-

ably ten times its smallest in the early winter. Both the increase and the decrease of this population are now carried by the complainant and another competing railroad company connecting Atlantic City with Philadelphia. That means an enormous amount of travel. The Atlantic City and Suburban Company is the first traction company to enter the city. It is obviously seeking to carry a share of this great number of travelers to and from Atlantic City, and will be obliged to compete with the steam roads, which have double tracks and run to Atlantic City from Philadelphia in from fifty-five to sixty minutes.

It is, I think, quite plain that in order to do anything at all in the way of competition for such travel, the Atlantic City and Suburban Company will have to use first-class trolley cars (probably in couples) and of large size, well equipped and fitted, and in all likelihood filled to the utmost extent with passengers, and will have to run such cars frequently and with great speed.

The result now plainly indicated, will be, that this defendant company's cars at the particular place in question must cross the steam railroad tracks under circumstances which will necessarily be extremely dangerous, both to those traveling in the trolley cars, to the passengers on the steam railroad company, and also to travelers in ordinary vehicles—wagons, automobiles, and the like—passing over the public highway. All of them are involved in the dangers of this crossing.

The ordinance provision for safety protection seems to be quite inadequate and to subject all the parties to liability to injury from collisions which may occur because of the frequent passage of these many different vehicles, with such variant motive powers, over the same crossing at grade.

The complainant company suggests the adoption, for greater safety, of a self-acting, interlocking and derailing switch system, by which the tracks of the steam railroad or of the trolley company (one or the other) will always be broken, and trains or cars approaching the crossing on those tracks which are broken will be warned by a signal to stop. This is the plan used where the main line tracks of steam railroads cross. It involves very expensive apparatus and the constant attendance of a

switchman. As originally proposed, it would cost, capitalizing the annual wages of the switchman, about $37,000.

The defendants have submitted several plans for the protection of the crossing. None of them requires the presence of a switchman, but all of them provide that the trolley tracks shall, at a proper distance from the crossing, be broken until the conductor or motorman shall go from the approaching trolley car and turn a lever, which will, by the same motion, restore the trolley car tracks until the trolley car crosses, and give one or more danger signals on the steam railroad tracks.

The plan suggested by Mr. Lane, one of the defendants' experts, who brought with him working drawings, appears to me to afford all necessary protection and warning, and to be so adjustable to varying circumstances that it will meet and relieve against all the elements of inconvenience and danger at the crossing in question.

This plan may have either one signal of warning to the steam railroad or both a "home" and a "distant" signal, if desired. If electric cars be put on the present steam railroad tracks, this plan can be adjusted to meet the proposed change. Its expense will be about $1,800.

My impressions of the whole situation at this crossing favor the adoption of Mr. Lane's plan, as at once the most feasible, efficient and economical to accomplish the object in view.

The complainant requests a modification of Mr. Lane's plan by which semaphore instead of disc signals may be put up, and both "home" and "distant" signals be provided on the steam railroad, and that a pipe shall be used rather than a wire or chain to work the derailment and restoration of the track. These suggestions appear to be reasonable changes, tending, without great additional expense, more effectually to accomplish the object sought.

The parties appear to be able to confer with each other in a very proper spirit. It is for their mutual advantage that the details of the plan finally ordered shall be arranged by conference of their experts. I will advise a decree as above indicated, that Mr. Lane's plan, with the above-named changes, shall be

adopted. I will, however, delay signing any decree for a few days, until the parties have an opportunity, if they choose to use it, to confer together and perfect such an arrangement, under Mr. Lane's plan, as they may agree upon. The decreee may prescribe the plan so settled. This without prejudice to the right of either party to take an appeal from the decree so framed.

' The expense of this plan of crossing should, in my judgment, be borne by the traction company. That may be a ground upon which that company may desire to appeal from the order here made, and that right shall not be imperiled by its assent to the precise formulation of the plan in the decree.

The steam railroad company was given the right to put its railroad at this crossing of the highway, and has built and completed its tracks and is now in possession. The traction company has since been given a crossing at the same place. While it is true that the traction company, with respect to the owner of the fee, is enjoying one of the modes of using the public right of way over the land for which the highway was originally taken (*Hinchman* v. *Paterson Horse Railroad Co., 2 C. E. Gr. 75*), yet it is equally true that the trolley company has by its franchise acquired for itself a right to exclude from the habitual use of its tracks all those who may be engaged in competitive business. *Camden Horse Railroad Co.* v. *Citizens' Coach Co., 6 Stew. Eq. 267*. For this special convenience thus afforded the public in the use of the highway, it is authorized to charge its passengers a fee for using its cars. The construction of its tracks and the safe passage of its cars over steam railroad tracks in its route are means whereby the traction company acquires this privilege. There seems to be no equitable ground which requires the senior company, presently in occupation, to pay anything to enable the junior company to construct its own crossing in such a manner that it shall not impair rights of the senior company already vested and in enjoyment. It is the duty of the junior company so to build its tracks over the senior company's rails that the crossing may be safe. The junior company has no right to threaten to build them in a dangerous manner, and to require

as a condition of its change to safe construction that the senior company shall pay its expenses in building on the safer plan.

This settlement of the mode in which the defendant company shall cross the complainant's tracks does not involve a reconstruction of the whole plan of the crossing in question, whereby the steam railroad tracks and the public highway will, for the better advantage of the parties now in possession, be changed from their present condition. It accomplishes only a crossing of the steam railroad tracks as they now are by those of the newcomer, the traction company. The latter company builds solely for its own advantage. It should, I think, in such a case, pay the expenses of the safe construction of its tracks across those of the steam railroad now on the spot.

I will advise a decree as above indicated. I will hear parties on the question of costs when the decree is presented for signature.