### 13123.   MACON RAILWAY AND LIGHT COMPANY *v.* SOUTHERN RAILWAY COMPANY.

1. Where the track of a railroad company crosses the track of another railroad company in a city street, the duty of keeping the crossing in repair rests upon both companies, and either may and should make all necessary repairs; but the company making them may recover the expense of such repairs from the other company, if, as between the companies, the duty of making the repairs was upon the latter.

2. Where there is a crossing of the tracks of two railroad companies in a city street, it is ordinarily, as between the companies, the duty of the crossing company, at whose instance and for whose benefit the crossing was made, to keep the crossing in repair.

3. Under the foregoing rulings and the facts of the case, the trial judge, who passed upon the case without the intervention of a jury, did not err in finding in favor of the plaintiff.

DECIDED MARCH 7, 1922.

Complaint; from Bibb superior court — Judge Malcolm D. Jones. March 25, 1921.

Application for certiorari was denied by the Supreme Court.

*John R. L. Smith, Grady C. Harris,* for plaintiff in error.

*J. E. Hall, Harris, Harris & Witman,* contra.

BROYLES, C. J.   The Southern Railway Company brought suit upon a certain account against the Macon Railway & Light Company. The defendant filed an answer denying liability. When the case came on for trial, counsel for both parties agreed to submit it to the trial judge without the intervention of a jury. The evidence adduced upon the trial is voluminous, but the controlling facts culled therefrom are in substance as follows: In 1881 the City of Macon, by a grant and ordinance duly adopted, conveyed to the plaintiff's predecessor in title, its successors and assigns, "a

perpetual right of way." The ordinance provided that a contract should be entered into between the City of Macon and the grantee, covering this grant. Such a contract was executed, and it was ratified and confirmed by an act of the legislature approved December 15, 1892 (Acts 1892, p. 176). By this contract the City of Macon sold and conveyed to the grantee a perpetual right of way through the streets and commons of the City of Macon, including Wharf street (now known as Ocmulgee street), which crossed Fifth street at grade. The contract provided also that the right of way along Wharf street should be 80 feet wide and located as near as practicable to the side of the street towards the Ocmulgee river. It contained the further provision that the grantee should " build and keep suitable crossings on all the streets over which track runs or crosses at grades, and   .   .   build and keep in order the bridges that may be deemed necessary by the mayor and council." It also provided that " this contract shall continue in force perpetually and inviolable, subject to the conditions hereinafter stated, and said company covenanting and agreeing that the stipulations and agreements herein mentioned shall be a perpetual charge on said road, whether in the hands of its present owners or in the hands of any person or persons to whom they release, sell, or assign the same."

In 1882 the plaintiff's immediate predecessor in title laid its first track along Wharf street in the City of Macon and across Fifth street. In 1885 the defendant's predecessor in title laid its track along Fifth street and across Wharf street, making a grade crossing of the two railroad-tracks at the intersection of these streets. In 1893 the plaintiff's immediate predecessor in title laid a second track along Wharf street and across Fifth street. In 1916 and 1917 the plaintiff found it necessary to shift its two Wharf-street tracks in order to provide a proper approach to the new passenger depot then being built in the City of Macon. The shifting of the tracks was well within the bounds of the plaintiff's right of way. In December, 1918, and again in January, March, and August 1919, the crossing of the tracks at Wharf and Fifth streets (which was effected by means of a rigid steel base on which and as a part of which the intersecting tracks were welded) was in need of repairs. The defendant (although it had paid for the cost of the construction of the crossing and its maintenance up to this time)

refused to make the necessary repairs; and, in order to protect its passengers and property, the plaintiff made the repairs at an expense of $114.98. It is this amount which the plaintiff seeks to recover.

The court, sitting both as judge and jury, found in favor of the plaintiff, and the defendant, in excepting to this finding, contends: first, that the plaintiff's right at the locus in quo was only a right of way which was subordinate to the prior and otherwise superior rights of the public; second, that if priority in time controls, the defendant's track was prior to one of the two tracks of the plaintiff, and therefore the latter should bear at least the expense of maintaining one crossing; and third, that if the plaintiff was originally prior in time, it ceased to be such when it abandoned its original crossings and made new crossings.

We have no hesitancy in holding that the plaintiff was the senior company presently in occupation, with vested rights, when the defendant's predecessor in title constructed the crossing at the locus in quo, and that the plaintiff was equally in possession at the time of the building of its second track as it was at the time of the construction of its first track. Where a city gives a railroad company the right to construct its tracks on a certain street, and the ordinance contains no limitation as to the number of tracks which may be laid, and the company constructs one track in the street, it has the right to thereafter build another track. Workman v. Southern Pac. R. Co., 129 Cal. 536 (62 Pac. 185 (2), 316). It is contended, however, that even if the plaintiff was originally the senior line, it ceased to be such when it made material changes in the crossing. There is no merit in this contention, as the evidence amply warranted the judge, sitting without the intervention of a jury, in finding that the change in the crossing, made by the direct order of the railroad commission, for the purpose of providing a proper approach to the new depot, did not amount to a relocation of the tracks. The shifting of the tracks was done entirely within the plaintiff's 80 foot right of way. " A railroad company may locate its tracks on any part of its right of way. It need not locate in the center thereof. And it has been held that one location of its tracks on its right of way does not deprive the road of the right to make another location. Such a change is not to be regarded as a relocation of the road. To constitute a

relocation, it is necessary that the new line shall be projected, in whole or in part, over and upon ground not included within the original right of way or its additions." 22 Ruling Case Law, § 99, p. 847.

We come now to the crux of the case, to wit, whether, under the facts stated, the plaintiff or the ·defendant, as between themselves, is liable for the cost of maintaining the crossing? The books of our State contain no case directly in point. However, there are several cases from other judicatories which in principle control the question adversely to the contentions of the defendant. In the case of West Jersey &c. R. Co., *v.* Atlantic City &c. Traction Co., 56 N. J. Eq. 613 (56 Atl. 890), it was held: "Where a newly organized company is authorized to lay its railroad tracks at grade across the existing tracks of another railroad, and the construction proposed involves only such a crossing, the new company should pay the expenses incident to the safe construction of its tracks across those of the senior company." Certainly, if it is the duty of the junior company to pay for the construction of its tracks across the senior company's tracks, it follows that it would also be the junior company's duty to maintain the crossing in good repair. The reasons are just as cogent for the maintenance as for the original construction. And in Central Pass. Ry. Co. *v.* Philadelphia &c. R. Co., 95 Md. 428 (52 Atl. 752), it was so ruled, the third headnote to the decision being as follows: "A street-railroad company constructing its track across steam-railroad tracks rightfully located in a city street must perpetually maintain and repair such crossing according to the direction of the engineer of the steam road." And in 33 Cyc. 250, appears the following statement: "Where one railroad crosses the track of another, it is ordinarily the duty of the crossing company at whose instance and for whose benefit the crossing is made to defray the entire expense of its construction in the first instance, and subsequently *to keep the crossing in repair.*" (Italics ours.)

We think the above rulings are based upon sound law, justice and equity, and should be applied to the instant case, where the construction of the crossing was at the instance and for the sole benefit of the defendant. Although both companies had a legal right to the use of the city streets where the tracks crossed, and although the duty of keeping the crossing in repair rested upon

both companies, common justice requires that the company for whose benefit the crossing was made should not only pay for its construction, but should defray the expense of maintaining it in a good and safe condition.

A careful examination of the numerous cases cited in the brief of the learned counsel for the plaintiff in error discloses that the facts of those cases distinguish them from the instant case, and that they are not in conflict with the ruling here made.

It follows, from what has been said, that the finding of the trial judge in favor of the plaintiff was in accord with the law and equity of the case.

*Judgment affirmed. Luke and Bloodworth, JJ., concur.*