WISCONSIN PUBLIC SERVICE COMPANY and another, Appellants, vs. RAILROAD COMMISSION OF WISCONSIN and others, Respondents.

*December 13, 1924—January 13, 1925.*

*Street railways: Crossing railroad tracks: Who bears cost: Of construction: Of maintenance: Statutes.*

1. A street railway which extends its tracks across the tracks of a railroad at a grade crossing is required to pay the entire expense of the construction, and is also required to pay such proportion of the expense of maintenance as is caused by the presence of the street railway, the senior road being charged only with the sum which it would cost to maintain its road at the point of intersection had the crossing by the street railway not been made. p. 544.
2. Statutes which are clear and unambiguous are not open to construction. p. 544.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

The defendant *Chicago & Northwestern Railway Company's* double-track main line runs north and south in the city of Green Bay, and crosses Walnut street at the intersection of that street with Pearl street. The defendant *Kewaunee, Green Bay & Western Railway Company* has a single-track line on its main line which crosses a street in said city known as Shawano avenue. The *Wisconsin Public Service Corporation* operates a street railway in the city of Green Bay; and in February, 1922, after having been duly authorized by the city, extended its tracks along Walnut street and over the tracks of the defendant *Chicago & North-*

*western Railway Company,* and also across Shawano avenue, over the track of the defendant *Kewaunee, Green Bay & Western Railway Company.*

A petition having been filed with the *Railroad Commission* for the apportionment of the expense of construction and maintenance of such crossings, an order was entered by the *Commission,* after a due hearing of the matter, which required the appellants in each case to pay the entire cost of the construction of the street railway crossing and seventy-five per cent. of the cost of its maintenance, the balance of the cost of maintenance, twenty-five per. cent., being apportioned to each of the railroad companies respectively. The apportionment to each of the railroad companies for maintenance was fixed by the *Commission* upon the theory that the same represents the cost of maintenance had no street-car line been built over the crossings. In effect, therefore, the *Commission* ordered the appellant to pay the entire cost of construction and maintenance of its crossings. The correctness of this order of the *Railroad Commission* is challenged by the action herein, and upon a hearing in the circuit court the order of the *Railroad Commission* was affirmed and judgment was entered dismissing plaintiffs' complaint with costs, from which judgment this appeal was taken.

For the appellants there were briefs by *Miller, Mack & Fairchild,* and oral argument by *Bert Vandervelde,* all of Milwaukee.

For the respondent *Railroad Commission* there was a brief by the *Attorney General, C. A. Erikson,* deputy attorney general, and *E. L. Wingert* of Madison, and oral argument by *Mr. Erikson.*

*R. N. Van Doren* of Chicago, for the respondent *Chicago & Northwestern Railway Company.*

For the respondent *Kewaunee, Green Bay & Western Railway Company* there was a brief by *Olin & Butler,* and oral argument by *Ray M. Stroud,* all of Madison.

Doerfler, J.    The appellants herein will be referred to as the "street railway" and the respondents as the "railroad."

The trial court based its decision upon the holding of this court in the case of *State ex rel. Northern Pac. R. Co. v. Railroad Comm.* 140 Wis. 145, 121 N. W. 919.    That case involved a crossing of a senior railroad by a junior.    It was expressly held that the junior road, under the provisions of sub. 6, sec. 1828, Stats. 1898, now sub. (6) of sec. 190.12 of the Statutes, had the right to cross the senior road, but that the entire expense of constructing and maintaining the crossing must be borne by the junior road. While a case involving the crossing of a street railway over a street crossing of a railroad has not arisen in this state, the law laid down in the *Northern Pacific Case* would govern unless it can be said that the street railway crossing is not of "the same general nature as a crossing of one railroad by another."    In the instant case the railroad crossing was constructed pursuant to the provisions of sub. (5), sec. 190.12, of the Statutes, subject to the conditions prescribed by sec. 190.22, which provides: "Every corporation constructing, owning or using a railroad shall restore every . . . street . . . across, along or upon which such railroad may be constructed, to its former state or to such condition as that its usefulness shall not be materially impaired, and thereafter maintain the same in such condition against any effects in any manner produced by such railroad. . . ."    The condition thus imposed upon a railroad by sec. 190.22 is in recognition of the rights of the public to use the streets for the purposes of public travel.    When the railroad, therefore, obtained its right of way and had constructed its tracks and complied with the condition aforesaid, it became possessed and vested with a distinct right to operate its cars over the tracks at the crossing, and this right belonged to it and constituted a vested right.    See *Northern Pacific Case, supra.*    It is true that the construction of the railroad tracks over the crossing could not affect the rights of the public to

use the streets and the crossing for the purposes of public travel, because when the railroad obtained its right of way and built a crossing over the street it did so being charged with knowledge at all times of the right of the public to travel over this crossing either on foot or by the usual and ordinary methods of street travel. Inasmuch as the street railway in its use of the streets in the operation of its cars upon its tracks at all times had and now has the right to cross a railroad crossing at a street, it is entitled to a proper crossing, for to deny this right would be a denial of the rights of the public to use the street for public travel at a crossing. Therefore the street railway is entitled to a crossing, but such crossing is the crossing of the street railway and not the crossing of the railroad. The crossing is for the sole benefit of the street railway and not at all for the benefit of the railroad. Because the street railway has a franchise and has constructed its tracks upon the street, which includes the crossing, and operates its cars, it is authorized to charge a fare for the transportation of passengers. The crossing over the railroad is as much a part of its system as are the tracks laid upon other parts of the street. Instead of being a benefit to the railroad, the street railway crossing is a decided detriment, as it imposes new burdens upon the railroad and creates new and additional hazards. The street railway crossing, therefore, being a part of its system and necessary to the operation of the system, must be constructed and maintained by it. The dispute herein involved is not one in which the public is directly interested, but is confined to two private corporations organized to make profit for stockholders.

The learned circuit court in its opinion uses the following significant language, which we approve:

"To compel the senior road to pay the expense caused by a crossing which is installed for the benefit of the junior road is as clearly a taking of the property of the senior road as would be the taking of its privately owned right of way

for the purposes of a crossing. Neither at common law nor under the Statutes of Wisconsin can the cost of constructing and maintaining such a crossing be imposed upon the senior road."

While it is true, as contended by counsel for the street railway, that the construction and operation of a street-car system does not impose an additional burden upon the fee of the abutting owners, and while the street railway in its operation constitutes one of the recognized modes of public travel, and facilitates such travel, these facts do not constitute a reason why a street railway should not be obliged to pay for the cost and maintenance of its own crossing.

It is also contended by counsel for the street railway that the use made of the streets by it does not differ materially from the use made by the public when it resorts to the ordinary methods of public travel. In such contention counsel is clearly in error. Before the street railway can lay its tracks upon a public street in a city it must first obtain authority so to do from the proper public authorities. No authority is required on the part of the public in general to use the streets in the usual and ordinary manner, for it is for that purpose mainly that streets are laid out and maintained. A street railway corporation is organized for profit, and it operates its cars upon the streets for that purpose. On the other hand, streets are not maintained by the public for profit. The operation of street cars is confined to tracks, and the street railway can only operate its cars upon such tracks. Consequently the street railway is authorized to use but a portion of the street, while all portions of the street may be used by the public when it resorts thereto with the ordinary methods of travel. A street railway is not subject to the rules of the road, for reasons which are self-evident, while the public in general must obey such rules. The street railway has a superior right to that portion of the street covered by its tracks, and while the public in the use of the street is not excluded from that portion, never-

theless it must give way to the passage of the street railway company's cars. No other corporation and no individual is permitted to use the tracks in a way similar to that of the street railway without first obtaining authority therefor and paying compensation for the privilege. The foregoing constitute some of the essential differences between the use made of the street by a street railway and that of the public, but they do not constitute all of the differences, and others might be mentioned if it were deemed necessary.

It would appear that the use made of its tracks by a street railway company is substantially the same as that made by a railroad, and a crossing, therefore, made by a street railway over the tracks of a railroad is not materially different from a crossing of one railroad by another, and the rule, therefore, laid down in the *Northern Pacific Case* should be fully as applicable to a crossing of a street railway like that in the instant case as it is to the crossing of two railroads.

Counsel for the street railway concede that the entire cost of the construction of the crossings is properly placed upon their client, and no issue appears to be taken with the judgment of the court in that respect. If the total cost of construction of the crossings be a proper burden upon the street railway, then it must follow as a logical sequence that the total cost of maintenance must also be borne by it. The results arrived at by the *Commission* and by the trial court appear not only fully justified by the evidence, but they are highly equitable. The percentage of cost of maintenance apportioned to the railroad represents an estimate made by the *Commission,* and is based upon what it would cost the railroad to maintain its crossings had the street railway not constructed its crossings over its tracks. We approve the theory upon which the *Commission* and the trial court acted, and under the concession of counsel for the street railway in its brief, that if such theory be held as correct then the apportionment is also correct, the judgment of the lower court must be affirmed. The theory adopted by the *Com-*

*mission* and approved by the trial court is in harmony with the common-law doctrine as laid down in the *Northern Pacific* and other cases.

In the case of *West Jersey & S. R. Co. v. Atlantic City & S. T. Co.* 65 N. J. Eq. 613, 56 Atl. 890, where the facts involved were similar to those in the instant case, the court uses the following language:

"The steam railroad company was given the right to put its railroad at this crossing of the highway, and has built and completed its tracks, and is now in possession. The traction company has since been given a crossing at the same place. While it is true that the traction company, with respect to the owner of the fee, is enjoying one of the modes of using the public right of way over the land for which the highway was originally taken, . . . yet it is equally true that the trolley company has by its franchise acquired for itself a right to exclude from the habitual use of its tracks all those who may be engaged in competitive business. . . . For this special convenience thus afforded the public in the use of the highway, it is authorized to charge its passengers a fee for using its cars. The construction of its tracks and the safe passage of its cars over steam railroad tracks in its route are means whereby the traction company acquires this privilege. There seems to be no equitable ground which requires the senior company, presently in occupation, to pay anything to enable the junior company to construct its own crossing in such a manner that it shall not impair rights of the senior company already vested and in enjoyment. It is the duty of the junior company so to build its tracks over the senior company's rails that the crossing may be safe. The junior company has no right to threaten to build them in a dangerous manner, and to require, as a condition of its change to safe construction, that the senior company shall pay its expenses in building on the safer plan."

Many other cases are cited and quoted from in the briefs of counsel for the railroad, all of which sustain the position of the *Commission* and of the learned trial court. Among them are the following: *Pere Marquette R. Co. v. Michigan*

*Pub. Util. Comm.* 218 Mich. 307, 188 N. W. 515; *Central Passenger R. Co. v. P., W. & B. R. Co.* 95 Md. 428, 52 Atl. 752; *Macon R. & L. Co. v. Southern R. Co.* 28 Ga. App. 339, 110 S. E. 912; *Maine Cent. R. Co. v. Waterville & F. R. & L. Co.* 89 Me. 328, 36 Atl. 453; *Chicago & C. T. R. Co. v. W., H. & E. C. St. R. Co.* 139 Ind. 297, 38 N. E. 604; 25 Ruling Case Law, 1170.

While the obligation of a junior road, as above indicated in the *Northern Pacific* and other cases above referred to, constitutes the common-law doctrine, such obligation to pay the entire cost of construction and maintenance of a crossing devolves upon it by the express provisions of sub. (6), sec. 190.12, and sec. 193.13. Sec. 190.12, in defining the powers of railroad corporations, among other things specifies that they shall have power:

"(6) To cross, intersect, join and unite its railroad with any railroad heretofore or hereafter constructed, at any point on its route and upon the grounds of such railroad corporation, with the necessary turnouts, sidings and switches and other conveniences in furtherance of the objects of its connections. And every corporation whose railroad is or shall be hereafter intersected by any new railroad shall unite with the owners of such new railroad in forming such intersections and connections and grant the facilities aforesaid; and if the two corporations cannot agree upon the amount of compensation to be made therefor or the points and manner of such crossings and connections the same shall be ascertained by commissioners to be appointed by the court, as is provided in this chapter in respect to acquiring title to real estate. But no corporation which shall have obtained the right of way and constructed its road at the point of intersection before the application for the appointment of commissioners may be made shall be required to alter the grade or change the location of its road, or be required to bear any part of the expense of making and maintaining such crossing or of such proceeding."

Sec. 193.13, among other things, provides: "All of the

provisions of subsection (6) of section 190.12 of these statutes relative to railroad crossings shall apply to street and electric railways."

These sections of the statute above quoted are clear and unambiguous and therefore are not open to construction. The provisions of sub. (6), sec. 190.12, are expressly incorporated, by reference, into the provisions of sec. 193.13. Sec. 193.13 is not confined to railroad corporations or interurban roads, but in express language includes a street and electric railway. The statute, in so far as it refers to street railways, is not in derogation of the common law, but, as has heretofore been shown, is declaratory of the common law. That it was the object and intention of the legislature in the enactment of sec. 193.13 to place a street railway company in the same position with respect to construction and maintenance of crossings as a railroad company or an interurban line, cannot be successfully denied without ignoring the express language of the statute, and this, of course, cannot be done.

It appears from the evidence that the *Commission* in good faith apportioned the cost of the maintenance of these crossings. It would also appear that in the apportionment the street railway was treated rather liberally and that it therefore has no just reason to complain. We approve, therefore, the apt language of the learned trial judge in his decision:

"The only charge for the maintenance of these crossings that can be made against the senior roads is that which would not exceed the cost of maintaining the senior road at the point of intersection had no crossing been made. The amount fixed by the *Commission* fully equals if it does not exceed that amount. It follows that the plaintiff cannot complain of the percentages fixed by the *Commission.*"

*By the Court.*—Judgment of the lower court is affirmed.