# DETROIT, FORT WAYNE AND BELLE ISLE RAILWAY *v.* OSBORN.

## ERROR TO THE SUPREME COURT OF THE STATE OF MICHIGAN.

Argued January 15, 1903.—Decided April 6, 1903.

1. Where the plaintiff in error claimed and set up a right under the Constitution of the United States, and the decision of the Supreme Court of the State was tantamount to the denial of that right, there is a Federal question and a motion to dismiss will be denied.

2. Under the laws of the State of Michigan the commissioner of railroads has power to compel a street railroad to install safety appliances in accordance with law, the cost to be shared between it and a steam railroad occupying the same street, notwithstanding that the steam road is the junior occupier of the street.

3. There is a difference between ordinary vehicles and electric cars which

the State may, in the exercise of its police power, recognize without denying the company operating the electric cars the equal protection of the laws.

Where the objection that a statute does not provide for notice is taken for the first time in this court, and the record shows that there actually was notice given, it is not open to the plaintiff in error to complain that the statute did not provide for such notice.

THIS case involves the legality of an order of the commissioner of railroads of the State of Michigan requiring the plaintiff in error and the Union Terminal Association of Detroit, at their own cost and expense, to maintain and operate safety gates and derailing and signalling appliances at Clark avenue in said city. The order is inserted in the margin.[1]

---

[1] STATE OF MICHIGAN,              }
*Office of the Commissioner of Railroads.* }

*In re* application of The Common Council of the city of Detroit for additional protection at the Clark avenue crossing of the tracks of the Union Terminal Association in the city of Detroit, county of Wayne, Michigan.

Application having been received by the commissioner of railroads from the common council of the city of Detroit, Wayne County, Michigan, for additional protection at the Clark avenue crossing of the tracks of the Union Terminal Association in said city of Detroit, Wayne County, Michigan;

And after a personal inspection of the premises aforesaid, and after hearing representations of the city officials of the city of Detroit, as well as the arguments of the representatives of the said railroad company above named in relation thereto, and having decided after due deliberation that the public interests required said additional protection at the said crossing;

Now, therefore, by authority vested in me by law, it is hereby ordered:

That within sixty days from date hereof, you, the said Union Terminal Association Railway Company, cause to be constructed and thereafter operated and maintained, safety gates, and derailing and signalling appliances to be operated day and night by a watchman from a tower. Said tower to be constructed at the best point of vision at the said crossing, and so constructed that the said operator may have plain view of movements of all trains or cars on both of the respective lines. Derailers shall be provided and placed in the tracks of the Fort Wayne and Belle Isle railway, not less than seventy-five feet from clearance point of crossing, and signals shall be placed on the tracks of the Union Terminal Association at a distance of not less than 600 feet from said crossing. Said derailers and signals to be operated by levers in said tower, and such levers to be properly interlocked.

The order was made and issued under act 171 of the Public
Acts of the State of 1893, section 5 of which provides as fol-
lows :

" The commissioner of railroads shall, as soon as possible
after the passage of this act, examine the crossings of the tracks
of railroads and street railroads then existing, and order such
changes made in the manner of such crossings, or such safe-
guards for protection against accidents to be provided thereat,
as in his judgment ought to be so made or provided ; and shall
apportion any expense incident thereto between the companies
affected as he may deem just and reasonable."

The statute and order are attacked as depriving the plaintiff
in error of its property without due process of law, because
compliance with the order " will involve the expenditure of a
large sum of money ; first, in the construction of the said safety
devices, and if the same are constructed, in the maintenance
and repair thereof."

The plaintiff in error is a street railroad company incor-
porated under the laws of Michigan, and operates a railroad on
certain streets of the city of Detroit, including Clark avenue.
It succeeded in ownership and operation to a company known
as the Fort Street and Elmwood Avenue Railway, which was
also a street railway corporation.   The latter company was au-
thorized to construct its road on Clark avenue, and under its
grant did construct and operate its road thereon.   " At the
time the track was constructed," (we quote from the opinion of
the Supreme Court of the State,) " on Clark avenue there was
no railroad, or highway, street, lane, or alley, or crossing of
any kind, over Clark avenue between Fort street and the River

And it is further ordered that cost and expense of the construction,
maintenance and operation of said gates, tower and derailing and signalling
appliance, shall be borne by the Union Terminal Association and the Fort
Wayne and Belle Isle Railway Company, equally, share and share alike.
This appliance to be constructed in accordance with plans to be submitted
to and approved by the commissioner of railroads within thirty days from
date hereof, and such appliance to be further approved by the commis-
sioner of railroads before being put into use.   This order is subject to
modification at any time when in the opinion of the commissioner of rail-
roads the public safety will be more effectually secured.

road. In 1882 or 1883 the Wabash railroad constructed a single track across Clark avenue and across petitioner's tracks. Up to that time there had been no crossing over Clark avenue between Fort street and the River road of any kind, either that of a railroad, or a public highway, a private way, road, street, or alley. In the year 1893 or thereabouts the Union Station was opened at the corner of Third and Fort streets, in Detroit; and since that time said station has been used jointly by the Wabash, the Detroit, Lansing and Northern, the Flint and Pere Marquette, the Detroit and Lima Northern, and the Canadian Pacific railroads as a terminal point, the tracks over Clark avenue at this point having been increased from one to three to accommodate the increased traffic. These tracks are used as approaches to the Union Station, and incoming and outgoing trains and cars of all the foregoing roads, except the Canadian Pacific Railroad, pass over said tracks. There are thirty-eight regular daily passenger trains crossing Clark avenue upon these tracks. Besides this, the Canadian Pacific uses the station as an eastern terminus, connecting with the other roads for purposes of through east and west traffic."

In 1893, the legislature of the State passed the act hereinbefore set out, and under its authority the defendant in error made the order complained of.

The case was submitted upon the petition of relator (plaintiff in error), and the answer of respondent (defendant in error), and the mandamus prayed for denied. 127 Michigan, 219. This writ of error was then sued out.

*Mr. John C. Donnelly* for plaintiff in error. *Mr. Michael Brennan* was on the brief.

*Mr. Fred A. Maynard* for defendant in error. *Mr. Horace M. Oren*, attorney general of the State of Michigan, was on the brief.

Mr. Justice McKenna, after making the foregoing statement, delivered the opinion of the court.

1. A motion is made to dismiss the writ of error on the

ground that the record exhibits no Federal question. The motion is denied. The plaintiff claimed and set up a right under the Constitution of the United States, and the decision of the Supreme Court of the State was tantamount to the denial of that right. *Kaukauna Co.* v. *Green Bay &c. Canal Co.*, 142 U. S. 254.

2. The argument of plaintiff in error on the merits is that it was the first to occupy Clark avenue; that at that time there was no public highway or street crossing at such avenue; that subsequently the steam railroads laid their tracks, the Wabash Railway Company being the first to do so, but installed no safety devices of any kind, "though it were the junior company;" that the tracks on the other railroads were subsequently constructed and are controlled by the Union Terminal Company. It is hence asserted that the plaintiff in error cannot be made liable for any part of the cost of safety devices, because it is the settled constitutional law of Michigan that its occupation constituted no additional burden upon the highway, but is simply a method of using the highway for the purpose of public travel and "in direct furtherance of the purpose for which the highway was established, that the street railroad company in contemplation of the law bears no different relation to the highway than that of any other person using the highway for the moving of vehicles or for any other method of public or private travel, and cannot, as between others using the highway for like purposes, be required alone to bear the expense of installing and maintaining safety devices at steam railroad crossings designed for the protection of all the traveling public."

And further, it is also a well established principle of the constitutional law of Michigan, that a junior road seeking to cross another cannot shift any portion of the expense of maintaining safety devices without compensation, though the senior company did not insist upon the installation of the devices or compensation at the time the tracks of the junior company were constructed. In other words, it is asserted that the dangerous condition arose and yet arises from the steam railroads, and on them alone can the cost of safety devices be legally imposed.

3. It is also insisted that the law is unconstitutional because it does not provide for notice.

(1) It was conceded by the Supreme Court of the State that it was the law of the State that the compensation for the damages caused by crossing the tracks of a railroad by another railroad or by a highway included the cost of making the highway safe. But the court said : " An examination of these cases will show they were all cases where it was sought to obtain a right of way either for a railroad across a highway, or for a highway across a railroad, or a crossing for one railroad over the right of way of another ; and none of the cases relate to the question involved here, as to who shall bear the expense of additional safeguards ordered upon roads which have crossed each other for a long period of time."

And besides this element of time, the court said that there were other elements of damage which were either too remote or depended upon the relation of the roads to the State. Both elements are important. The conditions which exist to-day could not have been contemplated years ago, or be the measure of the rights and relations of the respective roads. Those rights and relations were necessarily determined at the time the crossings were made. What could not be foreseen could not have been made a ground of action, and if the growth of business and population can give rights to either of the bisecting roads it is not clear how the police power of the State can be limited in its control over either of them. The Supreme Court of the State recognized this and fortified its views by Michigan cases.

In *The Flint & Pere Marquette R. R. Co.* v. *Detroit & Bay City R. R. Co.*, 64 Michigan, 350, the court in an elaborate opinion expressed the rules of compensation when the right of one road to cross the tracks of another was sought by condemnation proceedings. In that case compensation was claimed not only for the use of the crossing, but for the cost of maintaining signals or a crossing system, cost of a watchman, and cost of stopping trains. These items were rejected. There was some uncertainty in the evidence, and the items for maintaining signals or the crossing system were disallowed on that ground,

but the court pointed out the difference between a " structural change in the property" for which compensation should be given, and those things which may be required by the legislature in the exercise of police regulations, as to which the roads "stand upon a 1 equality before the law, and neither can levy tribute upon the other as a compensation for obedience to its requirements." And such regulations, it was observed, " are as binding upon an existing road as one newly organized." The court cited the case of *Mass. Cent. R. R. Co.* v. *Boston, C. & F. R. R. Co.*, 121 Massachusetts, 124, where Mr. Justice Gray, then Chief Justice of the Supreme Judicial Court of Massachusetts, expressed the law as follows :

" A railroad corporation, across whose road another railroad or a highway is laid out, has the like right as all individuals or bodies politic and corporate, owning land or easements, to recover damages for the injury occasioned to its title or right in the land occupied by its road, taking into consideration any fences or structures upon the land, or changes in its surface, absolutely required by law, or in fact necessary to be made by the corporation injured, in order to accommodate its own land to the new condition. *Commonwealth* v. *Boston & M. R. R. Co.*, 3 Cush. 25, 53 ; *Old Colony Railroad Co.* v. *Plymouth*, 14 Gray, 155 ; *Grand Junction Railroad Co.* v. *County Commissioners of Middlesex*, 14 Gray, 553. But it is not entitled to damages for the interruption and inconvenience occasioned to its business, nor for the increased liability to damages from accidents, nor for increased expense for ringing the bell, nor for the risk of being ordered by the county commissioners, when in their judgment the safety and convenience of the public may require it, to provide additional safeguards for travelers crossing its railroad. *Proprietors of Locks and Canals* v. *Nashua & L. R. R. Co.*, 10 Cush. 385, 392 ; *Boston & W. Railroad Co.* v. *Old Colony Railroad Co.*, 12 Cush. 605, 611 ; *S. C.*, 3 Allen, 142, 146 ; *Old Colony Railroad Co.* v. *Plymouth*, 14 Gray, 155."

It is however contended that a street railway has a different relation to a street than that which a steam railroad has ; that the former " acquires a right to use the same in common with

other members of the traveling public, and is not an additional burden upon the street, but is merely an adaptation of the highway to a particular means of travel, and does not constitute an additional servitude. A railroad is, on the other hand, an additional servitude, and if it is built across a highway, it must do all things necessary to render the highway, for all its legitimate uses, as safe as it was before the railroad was built across it, or would be, if such railroad were not built across it at all."

It may be that this difference is recognized as to abutting property owners or crossing railroads, but it cannot be recognized as limiting or affecting the power of the State to regulate the management of the roads in view of the danger of their operation to the public. Whether electricity be the motive power or steam be the motive power there is enough danger in the operation of either to justify regulation. The record in this case shows that there are thirty-eight daily passenger trains crossing Clark avenue, and that the cars of the plaintiff in error pass every few minutes. It is manifest, as the Supreme Court of the State observed, that the crossing " is a place of unusual danger, not only to the passengers in the steam cars, but also to the passengers in the electric cars," and that the danger is caused by both. In such situation the city is surely not powerless to act, nor before acting must it ascertain the exact quantum of damage caused by each road, and by that standard assign the cost of protecting the public. See *Railroad Co.* v. *Street Ry. Co.,* 89 Maine, 328.

It is also objected to the order that it deprives plaintiff in error of the equal protection of the laws. The argument to support this contention is an extension of that which claims that the use of the street by the plaintiff in error " is merely an adaptation of the highway to the particular means of travel." And it is deduced that an electric street railway has an equality of rights with ordinary vehicles. That we think there is a difference between ordinary vehicles and cars propelled by electricity, which may be recognized by the State in the exercise of its police power, we have sufficiently indicated.

(2) The objection that the statute does not provide for notice

seems to be made for the first time in this court. It is not mentioned in the majority opinion nor in the dissenting opinion. It is not particularized in the petition for the writ of error nor in the assignment of errors. In the petition for this writ of error it is recited that the plaintiff in error in its application for mandamus claimed that the order of the railroad commissioners was invalid because it deprived plaintiff in error of its property without due process of law and denied it the equal protection of the laws. And also recited that on the "issue framed therein said cause went to a final hearing." The cause was submitted on petition and answer, and the petition alleged "that notice was given by respondent to relator and the Union Terminal Association, and the hearing had, at which relator's representative objected to the making of said order." It is therefore not open to the plaintiff in error to complain that the statute does not provide for notice.

*Judgment affirmed.*