PERE MARQUETTE RAILWAY CO. v. MICHIGAN PUBLIC
UTILITIES COMMISSION.

1. STATUTES—CONSTRUCTION—WORDS AND PHRASES.
   The meaning of a word employed in a statute must be
   determined from the context, and resort, if necessary, to
   the lexicon.

2. RAILROADS — EXPENSE OF MAINTAINING CROSSING FROGS — AP-
   PROVAL OF CROSSING BY PUBLIC UTILITIES COMMISSION—STATUTES.
   The power of approval of the "manner" in which the
   tracks of one railroad .company cross the tracks of an-
   other, given the public utilities commission by 2 Comp.
   Laws 1915, § 8365, has reference to the way, method, or
   mode of installing or repairing the physical crossing, and
   has no reference to an apportionment of the future ex-
   pense of maintaining said crossing.

3. SAME—CONSTRUCTION OF STATUTE — EXPENSE OF MAINTAINING
   CROSSING.
   Under 2 Comp. Laws 1915, § 8369, providing for appor-
   tioning the expense of maintaining crossings already in
   existence, where the tracks of one railroad company cross
   the tracks of another, but making no provision for main-
   taining crossings subsequently made, it must be taken
   that the legislature, either purposely or inadvertently, left
   the matter of expense of installing and maintaining them
   to rest upon the company for whose benefit the crossing
   is made, in accordance with the common .law.

4. SAME — HIGHWAYS AND STREETS — EXPENSE OF MAINTAINING
   CROSSING FROGS.
   While the right to use a public street gives to a street
   railway company the right to cross a steam railroad com-
   pany's tracks without compensation, such right does not
   operate as an occasion for casting upon the steam rail-
   road company a part of the expense of installing or main-
   taining the necessary crossing frogs, but the whole expense
   should be borne by the street railway company.

5. SAME — CROSSING FROGS — POLICE POWER — POWER OF PUBLIC
   UTILITIES COMMISSION.
   Although the public utilities commission under the pro-

   On right of railroad company to compensation for the crossing
of its track where it intersects a street or highway by an electric
road, see notes in 13 L. R. A. (N. S.) 916; L. R. A. 1915D, 843.

visions of 2 Comp. Laws 1915, § 8152, has power to order
the installation of a new crossing frog to take the place
of a defective one, in the interest of public safety, it has
no power to apportion the expense of same, or compel
the company whose tracks are crossed to bear part of
said expense.

FELLOWS, C. J., and MOORE, J., dissenting in part.

Appeal from Ingham; Carr (Leland W.), J.  Submitted January 26, 1922.  (Docket No. 36.)  Decided June 5, 1922.

Bill by the Pere Marquette Railway Company against the Michigan Public Utilities Commission and the Detroit United Railway, to set aside an order respecting certain crossings.  From a decree for defendants, plaintiff appeals.  Reversed in part.

*Parker, Shields & Seaton,* for plaintiff.

*Donnelly, Hally, Donnelly & Munro,* for defendant railway.

*Merlin Wiley,* Attorney General, and *J. E. Converse,* Assistant Attorney General, for defendant commission.

WIEST, J.  This suit involves the power of the Michigan public utilities commission to order a steam railroad company to bear one-half the expense of renewing and maintaining crossing frogs where its line is crossed in a public street by the lines of a street railway company.  The steam railroad track was constructed across the street, at grade, in 1895, and soon thereafter the street railway company at its own expense, and without any public sanction, installed in the street a physical crossing of the steam railroad track and has since maintained the same.  The crossing frogs needing renewal, upon application of the defendant street railway company the commission assumed to have authority in the premises and ordered the

crossing frogs to be renewed and maintained at the expense of both companies.   Thereupon the bill herein was filed to set aside such order.   The circuit judge found the commission had power in the premises and refused to set the order aside and by decree added to the order the command:

"That the said Pere Marquette Railway Company and the said Detroit United Railway shall immediately proceed to make, or cause to be made the necessary repairs to said crossings."

The suit is in this court on the appeal of plaintiff.

It is stipulated by the attorneys:

"That the only questions at issue in this case concern the actual physical crossing of the tracks of the Detroit United Railway and the Pere Marquette Railway Company, the repair and maintenance of the same as between the two companies, and the validity of the order of the Michigan public utilities commission with reference thereto, dated August 6, 1920. The maintenance of such crossing protection as watchman, gates or derailing system is not involved."

Counsel for plaintiff contend:

"That by the terms of section 3 of Act No. 171 of the Public Acts of 1893, the Detroit United Railway is:

"(*a*) Either required to install and maintain the crossings at its sole expense; or

"(*b*) Said act nowhere authorizes the Michigan public utilities commission to determine who shall bear the cost either of the installation or maintenance of the crossing frogs as between the junior and the senior road at a crossing constructed *subsequent* to the passage of the act, or to apportion it between them, and the commission was without statutory authority to make the order complained of in this case; and

"(*c*) In the absence of statutory authority the junior road at the crossing, in this case the Detroit United Railway, is required by common law to install and maintain the crossings at its expense."

The decision must turn upon whether the statute

confers upon the commission the power to apportion the expense of installing and maintaining new frogs at the crossings. If such power is not to be found in the statute then the order cannot be sustained for the power is not inherent in the commission and in the absence of a statute authorizing an apportionment of the expense the duty of installing and maintaining the physical crossing falls upon the street railway company, as we shall later point out.

Counsel for defendant street railway company, and the attorney general, in behalf of the defendant commission, claim that Act No. 171, Pub. Acts 1893 (2 Comp. Laws 1915, §§ 8365-8371), confers such authority, and call attention to sections one and three of that act.

Section 1 provides:

"It shall hereafter be unlawful for any railroad company to construct its tracks across the tracks of any street railroad or for any street railroad company, whether operated by horses, cable, electricity or other motive power, to construct its tracks across the tracks of any railroad company or across the tracks of any other street railroad company until the place where and the manner in which such crossing shall be made shall have been approved by the commissioner (now public utilities commission) of railroads."

Section 3 provides:

"Such crossings shall, in all cases where the commissioner of railroads deems it reasonably practicable, be made otherwise than at grade; and in accordance with plans to be approved by said commissioner; and when made at grade said commissioner shall prescribe the safeguards which shall be provided by the company desiring to make such crossing, to prevent accidents thereat."

Section 5 provides:

"The commissioner of railroads shall, as soon as possible after the passage of this act, examine the

crossings of the tracks of railroads and street railroads then existing, and order such changes made in the manner of such crossings, or such safeguards for protection against accidents to be provided thereat, as in his judgment ought to be so made or provided; and shall apportion any expense thereto between the companies affected as he may deem just and reasonable."

This last section in express terms applies only to crossings existing at the time of the enactment of the law in 1893. It does show, however, that the legislature had in mind the rule of law imposing the expense of physical crossings and their maintenance upon street railway companies where their tracks cross the line of an existing steam railroad in the public streets, and a recognition of the necessity of giving the commissioner express authority to apportion the expense of such changes as he might order in existing crossings.

This brings us to the consideration of section one of the act and to the language, "and the manner in which such crossings shall be made."

The attorney general says in his brief:

"It is true that said Act No. 171, Pub. Acts 1893, is the only act which directly authorizes any control by the defendant commission over the physical crossing of street railway lines and steam lines, but it will be our claim that this act is broad enough in its terms and should be construed to give the commission the authority claimed for it."

He contends that the words "and in the manner in which such crossing shall be made," should not be limited to mean the form, way or mode of crossing, but should be construed, under the provisions and purposes of the act, to include as well an apportionment of the expense thereof. The meaning of a word employed in a statute must be determined from the context and resort, if necessary, to the lexicon.

The Century Dictionary defines the word "manner" to mean:

"The way in which an action is performed; the method of doing anything; mode of proceeding in any case or situation; mode; way; method."

It is clear from the context that the word "manner" as employed in the statute has reference to the way, method or mode of installing or repairing a physical crossing. But this does not reach to an apportionment of the expense contrary to common law. We must conclude from a consideration of all the provisions of the act, that the legislature, either purposely or inadvertently, left the matter of expense of installing and maintaining all subsequent crossings to rest upon the company for whose benefit the crossing is made and in accordance with the common law.

The learned circuit judge was of the opinion that section 44 of Act No. 300, Pub. Acts 1909 (2 Comp. Laws 1915, § 8152), has a significant bearing upon the question involved.

That act provides:

"The police powers of the State over railroads, street railways, interurban railways and suburban street railways, whether operated by steam, electricity or other motive power, organized or doing business in this State, shall be and the same are hereby vested in the railroad commission, and it is hereby made the duty of said railroad commission to exercise the same in accordance with the requirements of the law."

The circuit judge reached the conclusion that the defendant commission, as the successor of the railroad commission, has plenary authority to require the plaintiff company to cause to be repaired and placed in proper condition any part of its track, or track structure, that is defective, and also to compel the use of proper methods of protection at all crossings, including crossings with street railway and interurban lines.

It may be conceded that under the police power and for the protection of the traveling public the commission is vested with power to order both companies to repair the crossing and to keep the same in repair, but this does not at all touch the question here.    If both companies are directed to make the necessary repairs and the street railway company does not make them and the steam railroad company does, then under the law the steam railroad company may sue the street railway company and recover the cost.    Under the order of the commission such right of recovery is cut off and that is the reason the question is here.

The order apportioning the expense reverses the well-established common-law rule, deprives plaintiff of the right, if it makes the repairs, to sue defendant company and recover the expense thereof, and places a burden upon plaintiff justified by no statute and contrary to its common-law rights.    When plaintiff crossed the public street with its railroad track it assumed the duty to keep the crossing so made by it in reasonably safe condition and repair, with reference both to its own purposes and for ordinary travel upon the highway.    3 Elliott on Railroads (3d Ed.), § 1580.

This duty was not enlarged by reason of the street railway crossing its track, so as to cast upon the steam railroad company any part of the expense of installing or keeping in repair the crossing frogs for the convenience of the street railway company.

"Where one railroad crosses the track of another, it is ordinarily the duty of the crossing company at whose instance and for whose benefit the crossing is made to defray the entire expense of its construction in the first instance, and subsequently to keep the crossing in repair, unless the crossing is above or below grade.    *    *    *    Each company, however, owes a duty to the public as a common carrier to see that a grade crossing is kept in good repair and either may and should make such repairs as are necessary; but

the company making them may recover from the other company if as between the companies it was the duty of the latter to do so, either by reason of its being the company for whose benefit the crossing was made, or its agreement to do so, or it may recover the proportion due from the other company where such expense is imposed by statute upon the companies jointly." 33 Cyc. pp. 250, 251; citing to the first part of the text *Toledo, etc., R. Co.* v. *Detroit, etc., R. Co.,* 62 Mich. 564 (4 Am. St. Rep. 875).

But it is claimed safety appliances made necessary for the protection of the public in the use of the street may be ordered and the expense thereof apportioned between the companies. *Detroit, etc., Ry.* v. *Commissioner of Railroads,* 127 Mich 219 (62 L. R. A. 149). The authority of the commissioner of railroads in that case was based upon section 5 of the act of 1893, above referred to, and in the opinion it is stated the crossing existed at the time of the enactment of the law. In the case at bar the stipulation as to the issues eliminates crossing protection such as watchman, gates and derailing devices.

The right to use the public street gave defendant company the right to cross plaintiff's railroad with its tracks, without compensation, but such right could not then, or later, operate as an occasion for casting upon plaintiff a part of the expense of installing or maintaining the necessary crossing frogs.

The rule is well stated in 25 R. C. L. p. 1170:

"Where a street railway has the right to cross a commercial railroad without compensation to the railroad the street railway must construct the crossing at its own expense; and it is obliged to put in the safest and best crossing in common use at the time. As the continuance of the crossing is as much for the benefit of the street railway as was its construction in the first instance, the cost of maintenance must be borne wholly by the street railway company; but it is the duty of the steam railroad company to supply the safety gates, or similar appliances, if necessary."

This being the law, in the absence of a statute to the contrary, it will not do to say the commission, under the police power, may nullify such rule of law at will.  The police power may be invoked to make the crossing safe but this in no sense involves the power to apportion the expense; the power to safeguard the public is ample without invading plaintiff's rights.

In *Central Passenger R. Co.* v. *Philadelphia, etc., R. Co.,* 95 Md. 428 (52 Atl. 752), all the questions here involved, except the construction of our statute, were raised and considered upon facts practically on all fours with the case at bar.  The case is so well reasoned and supported by authority that we adopt the following:

"The common law doctrine that whatever structures are necessary for the crossing of an old way by a new way must be erected and maintained at the expense of the party under whose authority and direction the crossing is made is applicable to railways and railroads which intersect each other upon the public streets of a city, unless that doctrine be modified by statute.  Outside of statutory provisions—and there are none such in this State—there is neither precedent nor authority for requiring the owner of the subsisting way to contribute any part of the expense rendered necessary to enable the owner of the new way to cross the old way.  The crossing of the old way is made for the benefit of the second comer, and not for the benefit of the owner of the old way; and even though both occupants claim under licenses from the same municipality, common justice dictates that the one for whose exclusive benefit the crossing is made should defray the expense of constructing it.  And as the continuance of the crossing is as much for his benefit as was the construction of it in the first instance, it is equally obvious that he should maintain it wholly at his own cost.  That is all the decree appealed against determined, and that is all the steam railroad insists on."

And the same rule exists in Canada.    5 Can. Ry.

Cases, 175.   See, also, *West Jersey & Seashore R. Co.*
v. *Atlantic City & Suburban Traction Co.,* 65 N. J.
Eq. 613, 623 (56 Atl. 890) ; *Chicago & Calumet Termi-nal Co.* v. *Whiting, etc., R. Co.,* 139 Ind. 297 (38 N. E.
604, 26 L. R. A. 337, 47 Am. St. Rep. 264).

It must be held that the commission had no power·
to apportion the expense of installing and maintain-ing the crossing frogs.

The decree entered in the circuit court and the order·
of the Michigan public utilities commission, so far as
the same require the plaintiff to bear a part of the
expense of installing and maintaining crossing frogs·
at the crossing in question, are reversed and vacated,
with costs to plaintiff against the defendant Detroit
United Railway.

The order, as one requiring new crossing frogs to
be installed, will stand affirmed.

CLARK, BIRD, SHARPE, and STEERE, JJ., concurred
with WIEST, J.

FELLOWS, C. J. (*dissenting*).   I am in accord with
the opinion prepared by Mr. Justice MOORE in the case
of *Michigan Air Line Railway* v. *Michigan Public
Utilities Commission, post,* 320, involving the cross-ing at Pontiac, in which case the same questions
are involved as are here involved.   I am, therefore,
compelled to dissent from the opinion prepared by
Mr. Justice WIEST in the instant case.   Notwithstand-ing some of the language used in *Toledo, etc., R. Co.*
v. *Detroit, etc., R. Co.,* 62 Mich. 564 (4 Am. St. Rep.
875), I think *Detroit, etc., Ry.* v. *Commissioner of·
Railroads,* 127 Mich. 219 (62 L. R. A. 149), affirmed
by the United States Supreme Court in *Detroit, etc.,
Ry.* v. *Osborn,* 189 U. S. 383 (23 Sup. Ct. 540),
settles the constitutional questions raised in these
cases, settles the extent of the police power of the
State and clearly recognizes the right of the State in

the exercise of that power to make the order complained of.   Mr. Justice MOORE, who wrote for the majority of the court in that case, there reviewed the authorities and, in my judgment, there laid down the rules of law which must govern this case.   During the course of the opinion, it was said:

"When the joint use of a crossing is obtained, is the position tenable that, because one road is older than another, the junior road must not only compensate the senior road for its present damage before it can cross, but for all time it must bear any additional future cost which may be made necessary by the erection and maintenance of appliances for the safety of the public, resulting from the increased use of the crossing?   We think it logically follows from what has already been said that this question must be answered in the negative.

"It is said:

" 'It cannot be pretended that without the existence of the steam-railroad crossing the railroad commissioner would have any jurisdiction, or that there would be any danger arising from the operation of the street railway which would call for an interference of the railroad commissioner.   His jurisdiction only attaches because of the danger arising from the construction and operation of the steam railroad crossing the highway at the point in question.'

"It is a complete reply to this suggestion to say that, if there was no highway at this point traveled by a line of electric-railway cars and by the public, there would be no occasion for the interference of the railroad commissioner.   It is because both of these conditions exist that human life is endangered at this crossing, and, under the exercise of the police power in the interest of public safety, the State is authorized to interfere through its agent, the railroad commissioner.   *   *   *

"New dangers upon the public streets require new safeguards in the interest of the safety of the public. It is a matter of common knowledge that, where electric cars run at frequent intervals across a railroad over which trains are frequently run, it is a place of unusual danger, not only to the passengers in

the steam cars, but also to the passengers in the electric cars. This danger is occasioned, not by the steam road alone, nor by the electric road alone, but by both of them. We have no doubt that, under such circumstances, the State, in the exercise of its police power, can take such steps as will minimize the danger, and can impose the expense of doing so upon the corporations causing the danger."

I think it should not be overlooked that the act creating the Michigan Railroad Commission (Act No. 300, Pub. Acts 1909 [2 Comp. Laws 1915, § 8109 *et seq.*]), to whose power the present commission succeeded, evidenced a legislative intent to clothe the commission with broad powers. Section 44 (§ 8152) of the act provides:

"The police powers of the State over railroads, street railways, interurban railways and suburban street railways, whether operated by steam, electricity or other motive power, organized or doing business in this State, shall be and the same are hereby vested in the railroad commission, and it is hereby made the duty of said railroad commission to exercise the same in accordance with the requirements of the law."

To my mind section 36 of the act (§ 8144) quoted by my Brother Moore in the *Pontiac Case* unquestionably gives to the commission the power to make the order in question. The order made was in the interest of the public safety. This crossing was put in over 25 years ago. It was so out of repair that trains could only pass across it at the rate of 6 miles an hour. The welfare of the public required its repair. In my judgment it was within the power of the commission to order the work done and apportion the costs between the two companies now using this dangerous agency in the transportation of their passengers. I agree with the following language of the trial judge:

"As the matter now stands the issue is not one between these two roads, but between the public and the appellant company. So viewed, I think it must be said that the defendant commission has the requisite authority to require the making of the necessary repairs and the charging of a portion of the cost thereof against the Pere Marquette Railway Company. The State, in the exercise of its police power, is entitled to deal with the situation that is found to exist. Repairs are admittedly necessary for the protection of traffic on both roads; and as between itself and the public appellant cannot avoid the obligation of seeing to it that its track structure is in proper and safe condition, and that its crossings are protected with sufficient safeguards."

It would seem from the record and the concessions of counsel in their briefs that the order should be modified. It appears that the Detroit United Railway by reason of its greater facilities to do the work, and the fact that it purchases crossing frogs in large quantities, would be able to do the work much more cheaply and expeditiously than could the Pere Marquette. I think the Detroit United Railway should do the work and the Pere Marquette should pay to the Detroit United Railway one-half the cost within 30 days from the completion of the work, the work to be commenced at once and to proceed with all reasonable speed. I think no costs should be allowed either party.

MOORE, J., concurred with FELLOWS, C. J.

The late Justice STONE took no part in this decision.