MICHIGAN AIR LINE RAILWAY *v.* MICHIGAN PUBLIC
UTILITIES COMMISSION.

RAILROADS—CROSSINGS—EXPENSE OF MAINTAINING CROSSING FROGS.
   On certiorari to review an order of the public utilities
   commission approving the crossing of the tracks of cer-
   tain steam railroad companies by the tracks of a street
   railway company and apportioning the expense of "the
   maintenance and renewals of the crossing frogs" share
   and share alike to the "companies whose tracks are
   crossed," the order approving the crossing is affirmed, but
   reversed as to the apportionment of the expense of re-
   newals of crossing frogs, which, under the decision in
   *Pere Marquette R. Co.* v. *Michigan Public Utilities Com-
   mission, ante,* 307, should be wholly borne by the street
   railway company. FELLOWS, C. J., and MOORE, J., dissent-
   ing in part.

Certiorari to Michigan Public Utilities Commission.
Submitted January 27, 1922.   (Docket No. 11.)   De-
cided June 5, 1922.

The Detroit United Railway filed a petition with
the Michigan Public Utilities Commission for an order
respecting certain crossings.   From the order made,
the Michigan Air Line Railway and the Detroit, Grand
Haven & Milwaukee Railway Company bring cer-
tiorari.   Reversed in part.

*Geer & Martin,* for appellants.

*William L. Carpenter* and *Samuel R. Williams*
(*Stevenson, Carpenter & Butzel,* of counsel), for ap-
pellee.

MOORE, J.   Counsel are agreed that the question in
this matter is a single one of law, *i. e.,* whether the

Michigan public utilities commission has statutory authority to apportion to and impose upon a railroad company which is the senior company, upon approving the crossing of its tracks by a street railway company, and prescribing safety devices to be installed at such crossing, more than the fair proportion of the expense it would have cost the senior railroad company to have kept in repair the portion of the track affected by the crossing if it had not been made; in other words, whether a share, to be determined by the commission, of the expense of future maintenance, renewal and operation of such crossing, and the safety devices to be installed thereat, can be apportioned to the senior company by the commission, without regard to what it would have cost the senior company to keep in repair its tracks if the crossing had not been made.

Plaintiffs are Michigan railroad corporations, while the Detroit United Railway, the applicant for approval of the crossings in question, is a Michigan street railway corporation. Plaintiff Michigan Air Line Railway has five tracks, consisting of a main track and four side or yard tracks, which cross Sanford street, Pontiac, while plaintiff Detroit, Grand Haven & Milwaukee Railway Company has one main track which crosses South Boulevard, Pontiac, these tracks having been in existence and use for a long time. In 1920, the Detroit United Railway, desiring to make a crossing of these tracks with its street railroad, made application to defendant for approval of such crossing; a hearing was had and under date July 21, 1920, defendant made its order approving the crossings, which order provided that the Detroit United Railway should bear the entire expense of making the crossings, and of installing the safety devices prescribed thereat, in the first instance, but that

"The cost and expense of the maintenance and renewals of said crossing frogs, together with the cost and expense of the maintenance, renewal and operation of said inter-locking systems, to be borne, share and share alike, by the companies whose tracks are crossed."

Plaintiffs at the hearing contended that no share of the expense of future maintenance of these crossings, or safety devices, could legally be apportioned to them, they being the senior companies, but that the entire expense of future maintenance should be borne by the Detroit United Railway, the junior company. The commission, in making its order, overruled plaintiffs' contention in this regard, for the reason it considered it has statutory authority to make the apportionment it did.

The statutory provisions calling for attention here are sections 8367 and 8144, 2 Comp. Laws 1915.

Section 8367 reads:

"Such crossings shall, in all cases where the commissioner of railroads (commission) deems it reasonably practicable, be made otherwise than at grade; and in accordance with plans to be approved by said commissioner (commission) ; and, when made at grade said commissioner (commission) shall prescribe the safeguards which shall be provided by the company desiring to make such crossing, to prevent accidents thereat."

This section was enacted in 1893.

Section 8144 reads:

"Authority is hereby given to the said commission, and it shall be its duty, if it shall deem it advisable, to prescribe the use of such modern generally approved system of protection for the safe operation of trains or cars at all crossings and junctions of railroads in this State, and at all crossings of draw bridges, upon which trains or cars are operated by steam, electricity or other power, such as will secure safety in the operation of trains or cars at such crossings, junctions and draw bridges, and to apportion the cost of construc-

tion, operation and maintenance of such system of protection among the several companies in such proportion as to the commission shall seem just. The commission, having determined such form of protection, shall immediately cause a description thereof over its official signature to be delivered to an officer of the railroad affected thereby, with notice that the same must be adopted and put into practical force within a reasonable time to be fixed by the commission."

This section became a law in 1909. The public utilities commission by the order made endeavored, and we think did, give effect to both the sections quoted. It required the junior road to pay all the initial expense of the crossing. It then apportioned the expense of maintenance and renewals share and share alike between them.

While we have never had a case before this court that came on all fours with the instant case, we think the principles involved were before this court in *Detroit, etc., Ry.* v. *Commissioner of Railroads,* 127 Mich. 219 (62 L. R. A. 149). That case was taken to the United States Supreme Court, 189 U. S. 383 (23 Sup. Ct. 540), where it was affirmed. The case is so accessible we shall content ourselves with simply referring to it and saying it sustains the commission in the order made. See 3 Elliott on Railroads (3d. Ed.), §§ 1480, 1582, 1586, 1609.

The order should be affirmed.

FELLOWS, C. J., concurred with MOORE, J.

We concur except that we think the question as to crossing frogs is controlled by *Pere Marquette R. Co.* v. *Michigan Public Utilities Commission, ante,* 307, decided of this date. WIEST, CLARK, BIRD. SHARPE, and STEERE, JJ.

The late Justice STONE took no part in this decision.