PERE MARQUETTE RAILWAY CO. *v.* MICHIGAN PUBLIC
UTILITIES COMMISSION.

RAILROADS — EXPENSE OF MAINTAINING HIGHWAY BRIDGE OVER
TRACKS—STATUTORY DUTY—PUBLIC UTILITIES COMMISSION.
  On certiorari by plaintiff railway company to review an
  order of the Michigan public utilities commission requir-
  ing plaintiff to repair a highway bridge over its tracks,
  where it appears that said bridge was built by plaintiff
  or its predecessor about 20 years ago, apparently in ex-
  ercise of its right under 2 Comp. Laws 1915, § 8243, to
  pass under said highway, rather than under the provisions
  of Act No. 92, Pub. Acts 1893 (1 Comp. Laws 1915, §
  4776), as claimed by plaintiff, the order of the commission
  is *held*, to be within its powers; the duty of plaintiff to
  maintain said bridge being a continuing one.

Certiorari to Michigan Public Utilities Commission.
Submitted June 5, 1923.    (Docket No. 18.)    Decided
November 13, 1923.

Certiorari by the Pere Marquette Railway Company
to review an order of the Michigan public utilities
commission requiring plaintiff to repair and maintain
an overhead crossing.    Affirmed.

*W. K. Williams,* for plaintiff.

*Andrew B. Dougherty,* Attorney General, and *Carl
D. Mosier,* Assistant Attorney General, for defendant.

BIRD, J.    It appears by the petition of plaintiff
filed in this matter that either in the year 1901 or 1902
the Pere Marquette Railroad Company (the predeces-
sor of plaintiff) was desirous of lowering the grade
of its railway at a point in the township of Grand
Blanc, Genesee county, where the highway between

On public service commission's power with respect to bridges
used by street railways, see note in 5 A. L. R. 65.

sections 27 and 34 crossed its railway at grade.    In pursuance of this desire it depressed its track.    This made it necessary to carry the highway over the track on a bridge 180 feet long.    The railway constructed the entire bridge and its approaches, and has ever since kept it in repair.    Recently the Genesee county board of road commissioners concluded the bridge needed repairs in order to safely carry the present traffic, and it instituted a proceeding before the Michigan public utilities commission to have the question determined, as to whose duty it was to repair it. Notice was given to plaintiff and a hearing had, the conclusion of the commission being that it was the duty of the plaintiff to repair the bridge, including the planking on the roadway over the bridge.    Plaintiff was unwilling to abide by this order and has removed the proceeding to this court by a writ of certiorari. Plaintiff's complaint is that the order made by defendant was too broad, and that in making it the commission exceeded its authority.    In justification of this contention plaintiff cites section 27 of Act No. 92, Pub. Acts 1893 (1 Comp. Laws 1915, § 4776), the material portion of which reads:

"* * * When, according to said plan of separation of grades, the street or highway will cross the railroad by an overhead bridge, the frame work of that part of said bridge within the side lines of the right of way and all abutments and supports sustaining that part of said bridge, shall be built, maintained and kept in repair by the railroad company, or where such bridge crosses the right of way of more than one railroad company, by said companies." * * *

It is argued from this section that the order of the commission should have gone no farther than to order plaintiff to repair that part of the bridge which was directly over its right of way.    Plaintiff contends that as the railroad right of way is only 100 feet wide and

the bridge is 180 feet long, the 80 feet should be kept in repair by the township by force of this statute.

The attorney general replies to this contention that there is no record nor proof to show that the highway bridge was built in pursuance of Act No. 92, Pub. Acts 1893. He cites the following statute pertaining to railroads as defining the obligation of plaintiff to restore the highway to its former condition and keep it in repair:

*"Fifth,* To construct its road or bridge over, upon, or across, or its railroad tunnel under any stream of water, water course, private road, street, lane, alley or highway, and across or under any plank road, railroad or canal which the route of its road or railroad bridge or railroad tunnel shall lie along or intersect; but the corporation shall restore the stream, water course, private road, street, alley, lane, highway, plank road, railroad or canal to its former state as near as may be." * * * 2 Comp. Laws 1915, § 8243.

And he further insists that if the changes were made by the railroad without instituting proceedings or having an agreement with the township authorities, the common-law duty would compel plaintiff to restore the highway and keep it in repair. 22 R. C. L., pp. 889, 890.

As bearing upon the power of the commission to make the order in question, Act No. 101, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 4314), is called to our attention, which reads, in part, as follows:

"* * * Said commission shall have power, when in their judgment they deem it necessary for the safety of the public, to change the location of or abolish any existing crossing of railroads with highways and to require, when in their judgment it would be practicable, a separation of grades at any such crossing and to prescribe the manner of construction and the terms upon which such separation shall be made and the proportion in which the expense of the alteration or abolition of such crossing or the separation of such

grades shall be divided between the railroad corporation and the State, county, good roads district or township." * * *

It appears to be conceded that the change of grade in 1901 or 1902 of plaintiff's railway was upon its own initiative.   It made the changes necessary, constructed the bridge and has since kept it in repair. There appears to be no record either with the railway or township authorities of the proceeding or arrangement under which it was first constructed.   The proofs, however, do show that the bridge was made necessary by reason of a change of grade of the railroad, and that the railroad company constructed the bridge, and has since kept it in repair.   Under these circumstances we think it may be assumed that the bridge was built by force of an agreement with the township authorities, and that the agreement included the obligation that plaintiff should keep it in repair. It would be improbable to conclude that the changes were made and the bridge built without some understanding with the township authorities, and if there were an understanding we may safely assume that the construction of the bridge and its repair for 20 years by plaintiff were in accordance with that agreement.

If it can be said, however, that the tracks were depressed, the bridge built and since maintained by plaintiff without any agreement with the township authorities, then we must conclude that plaintiff made the change in the grade and constructed the bridge in pursuance of section 8243, 2 Comp. Laws 1915. This section expressly requires the railroad to restore the condition of the street as near as may be, etc., and this court has held that this duty is a continuing one.   *Thayer* v. *Railway Co.*, 93 Mich. 150.

The question then arises whether the Michigan railroad commission has the authority by its order to compel plaintiff to make the necessary repairs to the

bridge in accordance with the mandate of the statute.

The legislation of the State, creating and defining the powers of the Michigan railroad commission, indicates that the legislature intended to confer the power upon the commission which it exercised in making the order in question.     Section 8152, 2 Comp. Laws 1915, provides:

"The police powers of the State over railroads, street railways, interurban railways and suburban street railways when operated by steam, electricity or other motive power, organized or doing business in this State, shall be, and the same are, hereby vested in the railroad commission, and it is hereby made the duty of such railroad commission to exercise the same in accordance with the requirements of the law."

Act No. 101, Pub. Acts 1921, § 27, appears to extend this power not only over railroads but over highways, where they are crossed by railroads.     The act specifically provides that:

"*   *   *   No public highway shall hereafter be constructed across the tracks of any railroad nor shall the tracks of any railroad be constructed across a public highway without having first secured the permission of the Michigan public utilities commission."   *   *   *

The act then proceeds to give the commission the power to make orders for separation of grades at highway and railroad crossings, and also power to abolish crossings altogether.     These acts indicate an intention to vest the commission with full power with reference to the creation and maintenance of highway and railway crossings.

Act No. 92, Pub. Acts 1893, which counsel suggests is the one which must control the commission, provides the machinery for compelling a separation of grades when the public interest requires it.     There was no proof before the commission that such a public exigency existed, and there is proof that the whole

change was made to serve the purpose and convenience of the railroad. For these reasons we cannot see how this act can be made applicable to the present situation. So far as the present record shows there was a statutory duty upon the part of the railroad to make repairs to the highway bridge in question, and we think the Michigan public utilities commission was well within its authority in issuing the order complained of.

The writ of certiorari must be dismissed and the order of the defendant commission affirmed.

MCDONALD and SHARPE, JJ., concurred with BIRD, J.

CLARK, J. (*concurring*). There is no evidence that the bridge was built under agreement as provided by Act No. 92, Pub. Acts 1893 (1 Comp. Laws 1915, § 4750 *et seq.*). The prime purpose of that statute was to provide a means of compelling separation of grades when there was public necessity therefor. In keeping with a settled policy of law, an agreement for construction and maintenance was permitted, that the proceedings to compel such separation might be avoided. The statute contemplates in such case a division of the expense of construction and maintenance between the parties. That the bridge was built by the railroad on its own initiative and because of change in location of its tracks, that it paid the whole cost of constructing the bridge, and for 20 years has kept it in repair, shows, not an agreement under such statute, but, as contended by the attorney general, an exercise of a statutory right of the railroad to pass under the highway, (2 Comp. Laws 1915, § 8243), and a recognition of its common-law duty, also declared by the statute just cited, to restore the highway to its former condition of usefulness. And the duty to

225—Mich.—2.

restore is continuous and includes the duty to repair. 22 R. C. L. p. 889; 53 L. R. A. 900.

The order of the commission was within its powers. It is affirmed.

WIEST, C. J., and MOORE and STEERE, JJ., concurred with CLARK, J.

FELLOWS, J. For the reasons stated in the dissenting opinions in *Pere Marquette R. Co.* v. *Michigan Public Utilities Commission*, 218 Mich. 307, and *Michigan Air Line Ry.* v. *Michigan Public Utilities Commission, Id.* 320, I agree with Justice BIRD that the order of the commission should be affirmed.

MOORE, J., concurred with FELLOWS, J.